RENDERED: JUNE 10, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0669-MR

MICHAEL HORN                                                APPELLANT

|  | APPEAL FROM FAYETTE CIRCUIT COURT |
| v. | HONORABLE THOMAS L. TRAVIS, JUDGE |
|  | ACTION NO. 19-CR-00116 |

COMMONWEALTH OF KENTUCKY                               APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, DIXON, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: Pursuant to his conditional guilty plea, Michael Horn appeals the Fayette Circuit Court's denial of his motion to suppress. We affirm.

The relevant facts are uncontested. In June 2018, a detective from the Lexington Police Department submitted an affidavit in support of a petition for a search warrant. The affidavit stated that, in March 2018, the affiant had received an anonymous tip from Crime Stoppers that Horn was "trafficking a large amount

of Marijuana" at his home. The tip noted Horn's approximate height and weight, as well as his address, telephone number, date of birth, and tattoos. According to the tip, Horn "was receiving approximately 10 pounds of Marijuana through the mail weekly" and "keeps a large amount of Marijuana and cash in his home and vehicle." The tip further alleged that Horn used his vehicle, a black Nissan Altima, to traffic marijuana. Also, the tip said that Horn had others who sold marijuana for him but Horn "himself sells pounds at a time and occasionally sells the smaller quantity of Marijuana in vacuum sealed packages."

The detective's affidavit stated that he had confirmed some information in the Crime Stoppers tip, such as Horn's address, date of birth, vehicle make and model, and phone number. The affiant also stated he had learned that, in December 2017, a canine had alerted to the presence of narcotics in a package addressed to Horn's address. However, a controlled delivery was unsuccessful and so the package was returned to the shipping facility. Finally, the affiant stated that he conducted a "trash pull"[1] for Horn's residence in June 2018, which revealed six one-gallon baggies containing marijuana residue, four vacuum-sealed baggies, three quart-size baggies containing marijuana residue, and mail addressed to Horn.

---

[1] "A 'trash pull' occurs when the police perform a search of one's trash can left for collection." *Smith v. Commonwealth*, 323 S.W.3d 748, 751 n.5 (Ky. App. 2009).

After a district judge signed a search warrant, a June 2018 search of Horn's home revealed a firearm, marijuana, and drug paraphernalia. Horn was later indicted for trafficking in eight or more ounces but less than five pounds of marijuana while possessing a firearm and for possession of drug paraphernalia. Horn eventually filed a motion to suppress. The overall thrust of the motion was that there were false or misleading allegations in the search warrant affidavit, thereby necessitating a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (hereafter a "*Franks* hearing").

After the Commonwealth responded, the trial court set the matter for a *Franks* hearing. However, both Horn and the Commonwealth declined to present witnesses. After supplemental briefing, the trial court issued an order denying Horn's motion to suppress. Horn then entered a conditional guilty plea to the amended charge of trafficking in at least 8 ounces but less than 5 pounds of marijuana without the firearm enhancement and to possession of drug paraphernalia. After being sentenced, Horn filed this appeal.

When a motion to suppress evidence obtained pursuant to a warrant is filed, a trial court must "determine whether under the 'totality of the circumstances' presented within the four corners of the affidavit, a warrant-issuing judge had a substantial basis for concluding that probable cause existed." *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010) (citing *Illinois v. Gates*,

462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).[2]  On appellate review, we must first determine if the facts found by the trial judge are supported by substantial evidence.  *Pride*, 302 S.W.3d at 49.  Here, there is no dispute over the trial court's factual findings.

Thus, our focus is on the second step of the appellate review process, which asks us to determine if the trial court "correctly determined that the issuing judge did or did not have a 'substantial basis for . . . conclud[ing]' that probable cause existed."  *Id.* (citing *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331).  And "probable cause is a practical, commonsense decision that given all the circumstances set forth in the affidavit there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Minks v. Commonwealth*, 427 S.W.3d 802, 810 (Ky. 2014) (internal quotation marks and citation omitted).

Although Horn attacks the trial court's result, he does not present a sufficient *Franks* attack.  Specifically, because "[t]here is, of course, a presumption of validity with respect to the affidavit supporting the search warrant[,]" to be entitled to a *Franks* hearing, a defendant's motion must:

> be more than conclusory and must be supported by more
> than a mere desire to cross-examine.  There must be

---

[2] Horn relies almost exclusively on federal court decisions.  However, decisions by federal trial and intermediate appellate courts are, generally, not binding upon us.  *See, e.g.*, *Commonwealth Nat. Resources and Environmental Protection Cabinet v. Kentec Coal Co., Inc.*, 177 S.W.3d 718, 725 (Ky. 2005).  Thus, we shall focus on precedent from Kentucky and the United States Supreme Court.  Also, we have considered all the arguments in the parties' briefs but decline to address any which are irrelevant, redundant, or otherwise without merit.

> allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Franks*, 438 U.S. at 171, 98 S. Ct. at 2684.

Horn submitted no supporting affidavits or other "reliable" offers of proof. Instead, he offers only conclusory, vague arguments that the affidavit was premised upon falsities or was made in reckless disregard for the truth. Thus, though he argues the trial court erred in failing to hold a *Franks* hearing, the true gist of Horn's argument is that the affidavit did not establish probable cause.

The lack of merit in Horn's *Franks* argument is amplified by the fact that the trial court set Horn's motion to suppress for a hearing. At the hearing, after both the Commonwealth and Horn's counsel made oral arguments, the court specifically asked Horn if he wished to present "anything else" including "testimony." Horn's counsel did not directly answer the court's question but instead continued to orally reiterate the arguments contained in his motion. Later, the court asked the parties if they wished to call the affiant as a witness; both parties declined. In practical terms, therefore, Horn waived the opportunity to have an evidentiary *Franks* hearing. *See, e.g., Smith v. Commonwealth*, 636 S.W.3d

-5-

421, 439 n.4 (Ky. 2021) (defining waiver as "a knowing and voluntary surrender or relinquishment of a known right" which "may be implied by a party's decisive, unequivocal conduct reasonably inferring the intent to waive . . . .") (internal quotation marks and citations omitted).

"But . . . our inquiry does not stop with the determination that [Horn] was not entitled to a" *Franks* hearing. *Rawls v. Commonwealth*, 434 S.W.3d 48, 57 (Ky. 2014). Instead, we must "determine whether the trial judge correctly held that the issuing judge did or did not have a substantial basis for concluding that probable cause existed." *Id.* at 57-58. In so doing we examine the "totality of the circumstances" to determine if there was a "fair probability that contraband or evidence of a crime" would be found at Horn's home. *Id.* at 58 (internal quotation marks and citations omitted).

The first main basis to support the existence of probable cause is the anonymous Crime Stoppers tip. We agree with Horn that "a bare anonymous tip is insufficient to establish probable cause[.]" *Id.* And there is no information in the affidavit here regarding the reliability of the anonymous tipster. Consequently, standing alone, the tip would likely not provide probable cause. However, "the lack of information concerning the reliability of the informants . . . simply factors into the totality of the circumstances assessment." *Minks*, 427 S.W.3d at 811. And the probable cause determination was based upon more than an anonymous tip.

Second, the affiant was able to corroborate at least some of the basic information in the tip, such as Horn's address, birthdate, vehicle, and phone number. Generally, "[t]he information to be corroborated [from an anonymous tip] cannot merely be information readily observable by any member of the general public . . . ." *Abdul-Jalil v. Commonwealth*, 324 S.W.3d 433, 436 (Ky. App. 2010). But the corroboration of "'innocent' details" may help support the existence of probable cause. *Gates*, 462 U.S. at 229, 242-46, 103 S. Ct. at 2327, 2334-2336 (involving corroboration of travel plans). Here, the police initially corroborated information which any member of the public who randomly happened to see Horn would not know, such as his birthdate and phone number.

Third, the results of the trash pull help establish probable cause. That trash pull revealed six gallon-sized and three quart-sized baggies containing marijuana residue. The presence of marijuana, especially in large baggies, also helped corroborate the tip's assertion that Horn was a large-scale marijuana dealer. Additionally, the trash pull revealed four vacuum-sealed baggies. Though apparently those baggies did not contain drugs, their presence also helped corroborate the tip's assertion that Horn used vacuum-sealed packages in his trafficking operation.

Horn criticizes the trash pull on two main grounds. First, he asserts the issuing judge was not given proof that the trash was Horn's. But the trash pull

revealed mail from a credit card company addressed to Horn at Horn's address. And the trash was contained in a receptacle placed near the road in front of Horn's home. Those factors help show that the trash was from Horn's residence.

Second, Horn argues the Crime Stoppers tip was stale by the time of the trash pull. Though the information we have before us is scant, the affiant states that he received the Crime Stoppers tip in March 2018 and conducted the trash pull roughly three months later.[3] The affiant gave no reason for waiting before conducting the trash pull. But "[w]hether information supporting probable cause is stale must be determined by the circumstances of each case." *Lovett v. Commonwealth*, 103 S.W.3d 72, 80 (Ky. 2003) (internal quotation marks and citation omitted). And when the "affidavit indicates that the type of criminal activity was of a protracted and continuous nature," then "a judge may properly infer that there is a fair probability that evidence of wrongdoing would still be found on the premises given the totality of the circumstances." *Smith*, 323 S.W.3d at 754.

Here, the allegation was that Horn was engaging in a continuous course of large-scale drug trafficking. Thus, the roughly three-month interval between the affiant receiving the Crime Stoppers complaint and the trash pull did

---

[3] Horn says the delay between the affiant receiving the Crime Stoppers tip and conducting the trash pull was four months, but actually less than three months passed between March 15 (when the affiant received the Crime Stoppers tip) and June 14 (when the trash pull was conducted).

not make the information in the anonymous tip unusably stale. Indeed, we rejected a strikingly similar argument in *Smith*, 323 S.W.3d at 750-54. In short, we reject Horn's argument that the information gleaned from the trash pull should not properly have been a factor in the probable cause determination.

The fourth main factor supporting probable cause is the failed controlled delivery in December 2017. Admittedly, the affidavit provides few supporting details regarding that attempted controlled delivery, nor does it explain what the police did to investigate Horn during the roughly six months between the unsuccessful controlled delivery and the trash pull. Consequently, we agree with Horn that there is not evidence to support the trial court's statement that there was a "7 month period in which Officers were actively investigating" Horn.

However, that does not mean the affidavit's reference to the unsuccessful controlled delivery must be ignored. The affidavit asserts that a canine had alerted to the suspected presence of narcotics in a package addressed to Horn's home. Although the affidavit does not state that the package was addressed to Horn, the suspected mailing of narcotics to Horn's home does, at least to a degree, help corroborate the allegation in the Crime Stoppers tip that Horn received marijuana in the mail. Moreover, though the controlled delivery had occurred about six months before the affidavit was executed, the alleged staleness of the information is, again, not dispositive given the allegation of Horn's ongoing, large-

scale trafficking operation. And the combination of a package suspected to contain narcotics having been mailed to Horn's home and the marijuana residue found in the trash pull refutes Horn's argument that the affiant possessed utterly no information linking Horn's home to narcotics activity.

Finally, though we decline to lengthen unduly this Opinion by discussing the sundry federal decisions cited by Horn, our decision is not changed by *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016), the main case upon which he relies. In *Abernathy*, a trial court held a *Franks* hearing at which the person who submitted an affidavit in support of a search warrant testified that he had no information to support the affidavit's assertion that occupants of a stated address were engaging in drug activity. Thus, the trial court excised those portions of the affidavit from the probable cause determination but nonetheless upheld the issuance of the warrant due solely to the discovery of marijuana residue as a result of a trash pull. *Id.* at 247-48. The Sixth Circuit held that the results of the trash pull, standing alone, were insufficient to create probable cause. *Id.* at 255-57. By contrast, Horn has not shown that the affiant here made false or materially misleading statements, nor was the warrant based solely upon the results of a trash pull. In short, in addition to the fact that it is not binding upon us, *Abernathy* is materially distinguishable.

In conclusion, it is likely that none of the individual factors, standing alone, would have been sufficient to justify the issuance of a search warrant. But the totality of the circumstances showed a fair probability that evidence of a crime would be found at Horn's home, so the issuance of the warrant was proper.

For the foregoing reasons, the Fayette Circuit Court is affirmed.

ALL CONCUR.

BRIEF FOR APPELLANT:

Noel Caldwell
Jerry L. Wright
Lexington, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky